| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**ICE MILLER LLP**<br>Louis. T. DeLucia, Esq.<br>Alyson M. Fiedler, Esq.<br>1500 Broadway<br>Suite 2900<br>New York, NY 10036<br>Phone: (212) 835-6312<br>louis.delucia@icemiller.com<br>alyson.fiedler@icemiller.com<br><br>*Counsel to AIRN Liquidation Trust Co., LLC, in its capacity as Liquidation Trustee of the AIRN Liquidation Trust.* | |
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*,[1]<br><br>      Debtors. | Chapter 11<br><br>Case No:  22-14539-JKS<br><br>(Jointly Administered) |
| AIRN LIQUIDATION TRUST CO., LLC, as Liquidation Trustee of the AIRN LIQUIDATION TRUST, and successor in interest to the estates of NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*,<br><br>      Plaintiff,<br><br>v.<br><br>MEDIA EFFECTIVE LLC, *et al.*,<br><br>      Defendants. | Adv. Pro. No.  23-1335-JKS |

1

**DECLARATION OF WILLIAM B. WALDIE
IN SUPPORT OF THE LIQUIDATION TRUSTEE'S EMERGENCY APPLICATION
FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE, AND
PRELIMINARY AND PERMANENT INJUNCTION**

I, William B. Waldie, having been first duly sworn upon an oath, state:[2]

1. I am an adult over the age of 18, and I have personal knowledge of and am competent to testify to the facts set forth in this declaration.

2. I am a Managing Director with Alvarez & Marsal's Disputes and Investigations practice in New York.

3. I have over thirty years of experience in complex internal corporate investigations, anti-corruption and FCPA, fraud and embezzlement, money laundering and forensic accounting investigations, including experience conducting and managing Ponzi scheme investigations, and similar types of fraud.

4. Alvarez & Marsal initially was retained in connection with the Chapter 11 case to act as financial advisor to the Committee of Unsecured Creditors. *See* Dkt. No. 368. Alvarez & Marsal was retained thereafter by the AIRN Liquidation Trust, by and through AIRN Liquidation Trust Co., LLC, the Liquidation Trustee appointed pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors* (as amended and supplemented, the "Plan") [Docket No. 3256[3]] and the order confirming same [Docket No. 3599] (the "Confirmation Order").

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.
[2] Capitalized terms, not otherwise defined herein, shall have the same meaning ascribed to them in the TRO and PI Application.
[3] All references to Docket Numbers contained herein refer to the docket in Bankr. D.N.J. Case No: 22-14539-JKS.

5. In the capacity of financial advisor previously to the Committee and now to the Liquidation Trustee, Alvarez & Marsal has undertaken an investigation of the Debtors' finances, including identifying any indicia of fraud.

6. As Managing Director, I have personally participated in and have overseen the investigation to date. In connection with this investigation, my team and I have reviewed substantial documents made available to us by the Debtors and through subpoenas.

7. As part of the investigation to date, Alvarez & Marsal analyzed financial transactions for National Realty Investment Advisors, LLC ("NRIA"), and NRIA Partners Portfolio Fund I, LLC (the "Fund") (collectively with "NRIA," and their debtor affiliates, the "Debtors") between January 2016 to present.[4] This includes numerous NRIA transactions involving Media Effective LLC and its owner, and only employee, Javier Torres.

8. I submit this Declaration in support of the *Liquidation Trustee's Emergency Application for Temporary Restraining Order, Order to Show Cause, and Preliminary and Permanent Injunction* (the "TRO and PI Application").

## The Transfers

9. Pursuant to a Bankruptcy Rule 2004 subpoena and Debtors' production, the Liquidation Trustee received bank records for NRIA and the Fund accounts ending in x7940, x1803, x1872, x0735, x3066, x7560, and x9730, which were analyzed, reviewed, and used in preparing the listing of transfers in **Exhibit 3, Ex. A**.

10. From 2016 through 2022, the Debtors (NRIA and the Fund) transferred approximately $36,522,290 to Media Effective and Mr. Torres. **Exhibit 3, Ex. A**. Approximately $34,486,210 of the NRIA Fraudulent Transfers occurred on and after June 7, 2018. Based on NRIA

---

[4] A&M also identified approximately $1.5 million in payments from NRIA to Media Effective during the period of August 2012 to December 2015 based on documents provided by the Debtors.

accounting records, Media Effective was also paid approximately $1,518,661 from NRIA during the period of August 2012 to December 2015.

11. Pursuant to a Bankruptcy Rule 2004 subpoena and Debtors' production, the Liquidation Trustee received the production of transfers from the Media Effective TD Bank Account ending in x0941, which were analyzed and used in preparing **Exhibit 3, Ex. B**.

12. For the Media Effective – TD Bank x0941 account records received and analyzed, no other customer/client deposits were identified, and NRIA and/or the Fund appeared to be the sole source of substantially all of the incoming funds.

13. From the period of March 2021 to December 2021, the Media Effective LLC – TD Bank x0941 account balance grew from approximately $850,000 to $2,700,000. This growth was substantially driven by continuing deposits from NRIA and/or the Fund for purported advertising. However, unlike in prior periods, there were no outgoing payments from the Media Effective – TD Bank x0941 account to advertisers and Media Effective retained the Fund's and/or NRIA's funds.

14. In August 2022 (just two months after the Petition date) two checks totaling $2,550,000 were written from the Media Effective LLC – TD Bank x0941 account to Charles Schwab with the check memos referencing "Investing" and "Investment." Documents received from Charles Schwab confirm Javier Torres applied for and was approved for an investment account in August 2022. The $2,550,000 of Media Effective funds, sourced from NRIA and/or the Fund (*see* Exhibit 3, Ex. A), were the first deposits into the Charles Schwab investment account. Multiple other round-dollar deposits were deposited into this Charles Schwab account after August 2022 that, on information and belief, are sourced from other Media Effective and Torres-controlled accounts funded by NRIA and the Fund.

15. The transfers listed on **Exhibit 3, Ex. B** reflect outgoing transfers from the Media Effective LLC – TD Bank x0941 account ranging up to $1,500,000.

16. Once funds were transferred from the Debtors and received by Media Effective, those funds were transferred to other Defendants such as Mr. Torres' family members and the Englewood Spanish Church[5] (collectively, as set forth in **Exhibit 3, Ex. B**, the "Subsequent Fraudulent Transfers," and with the NRIA Fraudulent Transfers, the "Fraudulent Transfers").

17. From January 2016 through January 2022, Javier Torres caused Media Effective to transfer approximately $555,000 to the Englewood Spanish Church. **Exhibit 3, Ex. B**. This includes over two hundred transfers, ranging from $150 to $18,000 per payment.

18. Pursuant to a Bankruptcy Rule 2004 subpoena, the Liquidation Trustee identified the account information for numerous accounts that were either associated with the Defendants or received funds from the Defendants, as summarized in **Exhibit 3, Ex. C**.

19. Based on review of Bankruptcy Rule 2004 subpoena production, the following transfers from Media Effective to Javier Torres' family members are presently known:

   a. In February 2017, Media Effective paid a total of $255,000 to Natalia Torres;

   b. On or about February 28, 2018, Media Effective paid $2,000 to Fabio Dillman;

   c. Between May 2019 and December 2019, Media Effective paid a total of $27,745 to Ana Belen Torres; and

   d. On or about June 22, 2020, Media Effective paid $3,400 to Paulina Torres.

20. Recently, in or about July 2023, there was a withdrawal of funds by Javier Torres in the amount of $1,000,000 from his Charles Schwab account, which was funded through the

---

[5] The transfers reflected in Exhibit 3, Ex. B. refer to "Englewood Spanish Church." On information and belief, those entries reflect transfers of funds to Allegheny East Conference Corporation of Seventh Day Adventists (the "Allegheny Conference"), Community Seventh-Day Adventist Church ("Community SDAC"), and/or Ebenezer II Spanish Seventh-Day Adventist Church a/k/a Englewood Spanish Church ("ESC") (collectively, "Englewood Spanish Church.").

5

Fraudulent Transfers. That information was obtained pursuant to a Bankruptcy Rule 2004 subpoena issued to Charles Schwab and obtained and reviewed by me.

### The Atlantic Highlands Property

21.  In or about June 2021, Mr. Torres and his wife, Defendant Dora Dillman, purchased a waterfront property in Atlantic Highlands, New Jersey having an address of 148 Bayside Drive, Atlantic Highlands, New Jersey (the "Atlantic Highlands Property").

22.  The Atlantic Highlands Property was purchased for $1,575,000, apparently in cash as no recorded mortgage was located.

23.  The Atlantic Highlands Property appears to be wholly unencumbered.

### Conclusion

24.  Investigation into Media Effective and Javier Torres is ongoing, but the aforementioned transactions and referenced exhibits support the award of a temporary restraining order and preliminary injunction, in my opinion.

25.  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 10, 2023
New York, New York

_____
Alvarez & Marsal North America, LLC
Managing Director