UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**ICE MILLER LLP**
Louis T. DeLucia
Alyson M. Fiedler
1500 Broadway, Suite 2900
New York, NY 10036
Phone: (212) 835-6312
louis.delucia@icemiller.com
alyson.fiedler@icemiller.com

Aneca E. Lasley (admitted pro hac vice)
John C. Cannizzaro (admitted pro hac vice)
250 West Street, Suite 700
Columbus, Ohio 43215
Phone: (614) 462-1085
aneca.lasley@icemiller.com
john.cannizzaro@icemiller.com

*Counsel to AIRN Liquidation Trust Co., LLC, in its capacity as Liquidation Trustee of the AIRN Liquidation Trust.*

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL REALTY INVESTMENT ADVISORS, LLC, | Case No: 22-14539-JKS |
| Debtors. | (Jointly Administered) |
| AIRN LIQUIDATION TRUST CO., LLC, in its capacity as Liquidation Trustee of the AIRN LIQUIDATION TRUST, | Adv. Pro. No. 23-1335-JKS |
| Plaintiff, | Hearing Date: April 10, 2024 at 10:00 a.m. (EST) |
| v. | |
| MEDIA EFFECTIVE LLC, *et al.*, | |
| Defendants. | |

1

**LIQUIDATION TRUSTEE'S OBJECTION TO THE MOTION OF JAVIER TORRES, MEDIA EFFECTIVE, LLC, DORA DILLMAN, JAVIER TORRES, JR., NATALIA TORRES, AND PAULINA TORRES TO STRIKE THE JANUARY 17, 2024, DECLARATION OF GLENN A. LA MATTINA AS FALSE AND TO IMPOSE SANCTIONS ON THE SPONSOR OF THE DECLARATION**

AIRN Liquidation Trust Co., LLC, in its capacity as Liquidation Trustee of the AIRN Liquidation Trust (the "Liquidation Trustee" or "Plaintiff"), appointed pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors* (as amended and supplemented, the "Plan") [Case No. 22-14539, Docket No. 3256] and the order confirming the Plan [Case No. 22-14539, Docket No. 3599] (the "Confirmation Order"), that has been assigned and, as of the Effective Date of the Plan, holds the claims of Contributing Investors (as that term is defined in the Plan), by and through its undersigned counsel, hereby submits this Objection to Defendants Javier Torres, Media Effective LLC ("Media Effective"), Dora Dillman, Javier Torres, Jr., Natalia Torres, and Paulina Torres' (collectively the "Defendants") *Motion to Strike the January 17, 2024, Declaration of Glenn A. La Mattina As False and To Impose Sanctions on the Sponsor of the Declaration* [Dkt. No. 42] filed on March 28, 2024 (the "Motion"). In support of this Objection, the Liquidation Trustee relies on and incorporates the Declaration of Aneca E. Lasley ("Lasley Dec.") submitted in connection herewith. The Liquidation Trustee respectfully states as follows:

**INTRODUCTION**

This matter arises out of a massive, multi-year, multi-million-dollar Ponzi scheme perpetrated by National Realty Investment Advisors, LLC ("NRIA"), and its affiliated debtors and their respective principals (the "Debtors"). The Debtors are accused of orchestrating a nationwide Ponzi scheme and defrauding investors through the use of false advertising, and specifically advertisements placed and promoted by Defendants. By deploying an aggressive, expansive and expensive advertising campaign, spending approximately $85 million of investor

2

funds on marketing and advertising (of which over $36.5 alone was paid to Media Effective, an entity with one employee operating out of his home), NRIA raised approximately $664 million from investors before its scheme collapsed, with substantial help by Javier Torres ("Torres") and Media Effective (as Torres **admitted** at ¶¶ 163-165 of Defendants' expedited motion to declare the Court's temporary restraining order dissolved [Dkt. No. 22]).

Defendants seek two forms of relief. <u>First,</u> they seek to strike or preclude admission or use of the Declaration of Glenn A. La Mattina ("<u>La Mattina</u>") (the "<u>La Mattina Declaration</u>") [Dkt. No. 28-3]. As stated on the record on April 4, 2024, and for the reasons stated herein, the Liquidation Trustee will not rely on and withdraws the La Mattina Declaration. Accordingly, there is no issue to be resolved by the Court as to the Defendants' first requested relief.

<u>Second</u>, Defendants seek sanctions against the sponsor of the La Mattina Declaration. Sanctions are unwarranted and Defendants plainly seek "sanctions" in order to intimidate the Liquidation Trustee – a tactic common to Torres, whose history demonstrates a pattern and practice of meritless litigation.[1] Sanctions are wholly inappropriate here and should be seen for what they are – the desperate act of a caged wrongdoer.

La Mattina apparently lied at either his deposition or in his declaration – it is still uncertain where he lied – but his testimony cannot be reconciled. The Liquidation Trustee's professionals, including Alvarez & Marsal, Richard W. Barry (former Chief Investigator for the

---

[1] As the Liquidation Trustee has referenced in this action previously, Javier Torres and his wife, Dora Dillman, purchased their Atlantic Highlands Property in cash for $1,575,000. The purchase of that residence occurred despite the fact that Javier Torres and Dora Dillman were, at the time, actively engaged in and losing the foreclosure of their residence in Woodcliff Lakes, New Jersey by Investors Bank, which was ultimately sold at sheriff's sale in 2022. *See Investors Bank v. Javier Torres*, Superior Court of New Jersey Bergen County, Case No. SWC F-001463-15 (Writ of Possession dated May 20, 2022 and Writ of Foreclosure dated May 21, 2022). Javier Torres attempted to challenge the foreclosure of the Woodcliff Lakes, New Jersey property, but the case was ultimately dismissed. *See Javier Torres v. Investors Bank, et al.*, United States District Court for the District of New Jersey, Case No. 2:15-cv-01637-JMV-MF.

State of New Jersey, Bureau of Securities) and Ice Miller all interviewed La Mattina in person. The La Mattina Declaration is the product of those interviews – and was signed by La Mattina ***after he reviewed and revised it***. But at his deposition, he recanted. Counsel to the Liquidation Trustee was surprised – and the estate has been damaged by La Mattina's conduct (as to which the Liquidation Trustee reserves all rights). To seek sanctions against a fiduciary whose counsel interviewed and spoke with a witness on several occasions, and submitted a vetted declaration, signed by a witness on his own volition is specious, and should be seen for what it is – a desperate attempt by Defendants to distract the Court from the **merits** of the Liquidation Trustee's case against them.

La Mattina was hired in May 2018 by NRIA to serve as its Vice President of Operations. Later, in 2019, La Mattina was named NRIA's Senior Vice President of Global Operation. La Mattina held that role through 2021 when he ultimately became the Chief Operating Officer of NRIA. Given La Mattina's tenure at NRIA, the Liquidation Trustee located and reached out to him to determine if he would cooperate in answering questions the Liquidation Trustee had about the inner-workings of the Debtors' Ponzi scheme. Lasley Dec. ¶ 4.

Accordingly, the Liquidation Trustee and its investigators contacted La Mattina and set up a meeting with him to determine whether he would cooperate in answering questions. La Mattina voluntarily attended that meeting and agreed to be interviewed again just months ago on January 11, 2024. All of his actions—up until his deposition taken in this action—confirmed his desire to voluntarily and truthfully cooperate with the Liquidation Trustee. *Id*. ¶ 5.

During the January 11 interview, La Mattina disclosed certain information regarding Javier Torres and Media Effective LLC, relevant to this action. As a result, La Mattina helped draft a declaration related to this proceeding, and willingly offered information to the Liquidation

4

Trustee. Specifically, counsel for the Liquidation Trustee prepared an initial draft of La Mattina's declaration based on notes from the January 11 interview and then provided a draft to La Mattina to edit for accuracy. La Mattina not only had an opportunity to review the declaration, but he also submitted revisions and comments to the Liquidation Trustee which were incorporated into the declaration, and he voluntarily signed the same. La Mattina has neither received nor been promised anything in exchange from the Liquidation Trustee or its counsel for agreeing to the interview, executing the declaration, or otherwise cooperating in the Liquidation Trustee's investigation. Rather, he voluntarily signed it under his own volition. All of La Mattina's actions—up until his deposition—empowered the Liquidation Trustee to act in good faith and reasonably rely on the statements and information provided by him.

However, on March 22, 2024, La Mattina's cooperation unilaterally ended. He appeared for his deposition and distanced himself from the declaration, suggesting that the declaration he previously swore-to under penalty of perjury was replete with false statements.

In light of La Mattina's blatant disregard for honesty before this Court and his inexplicable one-eighty in information provided to the Liquidation Trustee's counsel, the Liquidation Trustee no longer desires to offer his testimony via declaration or otherwise, and it readily consents to the withdrawal of La Mattina's declaration. Had Defendants' counsel conferred with the Liquidation Trustee before filing the Motion, they would have learned that their request to strike is, in fact, moot. But Defendants' counsel never conferred with the Liquidation Trustee's counsel.

Moreover, the only party to blame for the present situation (Debtors and Defendants aside) is La Mattina, not the Liquidation Trustee. The Liquidation Trustee did not act in bad faith in submitting La Mattina's declaration, as it relied in good faith on his cooperation, the

statements he voluntarily made, and the information he claimed to have personal knowledge of at the time of his interviews and in signing the declaration.

Because the Liquidation Trustee did not act in bad faith or knowingly offer evidence that is untrue, sanctions against the Liquidation Trustee would be improper. Therefore, the Liquidation Trustee objects to Defendants' request to impose sanctions against the Liquidation Trustee and respectfully requests this Court **DENY** the Motion.

## BACKGROUND

1. On June 7, 2022, NRIA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). The factual background relating to the Debtors' commencement of the Chapter 11 Cases is set forth in detail the *Declaration in Support of Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 16], filed on June 8, 2022. The Chapter 11 Cases are jointly administered pursuant to the *Order (A) Directing Joint Administration of Chapter 11 Cases and (B) Granting Related Relief* [Dkt. No. 27], entered on June 9, 2022.

2. Following several months of negotiations, on April 11, 2023, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed the Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors [Dkt. No. 228] and the accompanying Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for National Realty Investment Advisors, LLC, et al. [Dkt. No. 2229] (the "Disclosure Statement"), which was approved by the Court on May 18, 2023 [Dkt. No. 2556]. On August 10, 2023, following the confirmation hearing held on August 1, 2023, the Court entered the Confirmation Order [Dkt. No. 3599].

3. The Committee and, thereafter, the Liquidation Trustee has been conducting discovery pursuant to Rule 2004 of various third parties, including those hired by the Debtors to

advertise and publicize their services and investments, including Defendants. Importantly, the Liquidation Trustee identified a list of advertisers and advertising agencies that, based on documentation and witness testimony, participated in the Debtors' fraudulent scheme and improperly obtained assets of the estate. Defendants are on this list of advertisers. Lasley Dec. ¶ 3.

4. Because La Mattina oversaw NRIA's fraudulent advertising efforts, he also was identified by the Liquidation Trustee as someone who had knowledge regarding the Debtors' fraudulent scheme. *Id.* ¶ 4.

5. From the outset of its administration, the Liquidation Trustee has welcomed the participation of individuals and entities that have knowledge of Debtors' fraudulent conduct, whether or not these individuals/entities participated in the fraudulent conduct themselves. Generally speaking, and in the name of cooperation, it has been the Liquidation Trustee's preference to work *with* these individuals/entities to reach a reasonable resolution without the need to file an adversary proceeding *against* them where possible. *Id.* ¶ 6. That is precisely the approach the Liquidation Trustee took when La Mattina indicated that he wished to cooperate with the Liquidation Trustee.

6. On May 4, 2023, La Mattina spoke with investigative consultants for the Liquidation Trustee (then, the Committee), including William Waldie and Rick Barry to discuss NRIA and the fraudulent scheme. *Id.* ¶ 7. During this meeting, La Mattina openly shared information with the Trustee's consultants. Following that initial interview, it remained apparent that La Mattina had inside information regarding the workings of NRIA, including familiarity with NRIA's advertising efforts, and in turn, Javier Torres and Media Effective's work for the Debtors. *Id.*

7. On January 11, 2024, La Mattina met with Liquidation Trustee's counsel, William Waldie, and Richard Barry to discuss a number of topics, including Javier Torres and Media Effective's role in the Debtors' fraudulent scheme and the assets transferred to Defendants as a result of their participation. *Id*. ¶ 8.

8. On January 16, 2024, Defendants filed their Motion to Declare the Temporary Restraining Order Dated November 22, 2023 Dissolved [Dkt. #22] along with an application to shorten time [Dkt. #23], which resulted in the Court scheduling a hearing on this motion for January 18, 2024.

9. The Liquidation Trustee prepared and filed its opposition to Defendants' motion on January 17, 2024 [Dkt. #28]. In support of its objection, counsel for the Liquidation Trustee asked Mr. La Mattina to submit a declaration attesting to the information he previously provided. Mr. La Mattina agreed and counsel for the Liquidation Trustee prepared an initial draft based on the collective notes of counsel and their investigators. Lasley Dec. ¶ 9.

10. On January 17, 2024, the Liquidation Trustee emailed a draft of the Declaration to La Mattina for his review and revisions. *Id*. ¶ 10. In response, La Mattina made sent back several edits and comments to the Liquidation Trustee's counsel to incorporate into the draft including changes regarding La Mattina's title and positions at NRIA and a comment regarding not being able to say Javier Torres was three times as expensive but that "he was always higher than the other bids." Counsel to the Liquidation Trustee incorporated La Mattina's edits and re-circulated the draft declaration to him for careful review, any additional feedback, or execution if he was satisfied. La Mattina provided no additional revisions, and instead, executed the declaration and returned that signed version to the Liquidation Trustee's counsel. *Id*.

8

11. On March 22, 2024, La Mattina sat for a deposition, the transcript of which is attached to the Lasley Dec. as Ex. A (hereinafter the "Transcript").

12. During his deposition, La Mattina testified that some of his sworn-to statements in the Declaration were speculative and/or outside of his personal knowledge.

13. Further, as Defendants noted in the Motion, during La Mattina's deposition, Defendants' counsel asked him if his Declaration is "replete with false statements," to which La Mattina answered in the affirmative. Trans. at 76:10-12.

14. The Liquidation Trustee's counsel was shocked by La Mattina's testimony.

15. Prior to La Mattina's deposition, La Mattina did not indicate falsity, express a concern, or otherwise indicate that the Declaration was anything other than true and accurate, including with respect to the assertion that it was based on La Mattina's personal knowledge. Lasley Dec. ¶ 12.

16. March 22, 2024—during La Mattina's deposition—was the first time the Liquidation Trustee learned that La Mattina did not stand by his sworn-to statements made in the Declaration. *Id*. ¶ 13.

17. Indeed, at the first opportunity, the Liquidation Trustee's counsel confirmed with La Mattina at his deposition as follows:

> Q. When you met with counsel for the Liquidation Trustee did counsel for the Liquidation Trustee ask you to be truthful?
>
> A. Yes.
>
> Q. And at any point in time did counsel for the Liquidation Trustee ever ask you to manufacture or falsify any information with regard to either Media Effective or Javier Torres?
>
> A. No.
>
> Q. . . . Did the counsel for the Liquidation Trustee ask you to falsify information with regard to anything related to NRIA?

9

A. No. No.

Q. You've got your declaration in front of you. That was La Mattina Exhibit 6. You recall receiving a copy of that declaration that had been drafted for you to review, correct?

A. Correct.

And you were given an opportunity to review all of the statements in that declaration, correct?

A. Correct.

Q. And I believe you said that you had some changes to it, correct?

A. Correct.

Q. So you had an opportunity to make revisions to it - -

A. Correct.

Q. - - if you wanted to?

A. Correct.

Trans. at 155:12-156:18.

18. As a result of La Mattina's statements made during his deposition, Defendants filed the Motion and moved this Court to strike the Declaration and impose monetary sanctions on the Liquidation Trustee as the "sponsor" of the Declaration. *See generally* Mot.

19. However, as represented to the Court during the April 4, 2024 hearing on Defendants' Motion to Quash [Dkt. #45] and explained herein, the statements of Mr. La Mattina are not needed to succeed on their claims against Defendants and the Liquidation Trustee has no intention of relying on any testimony of Mr. La Mattina, via declaration or otherwise. Therefore, the Motion to Strike is moot in this respect. Further, the Liquidation Trustee did not act in bad faith in relying on La Mattina or submitting the Declaration, therefore sanctions are not warranted.

## ARGUMENT

### A. In Light of La Mattina's Deposition Testimony, The Liquidation Trustee Consents to the Withdrawal of the Declaration.

20. The Liquidation Trustee agrees with few of Defendants' accusations and assertions riddled throughout the Motion. Yet one thing the parties can agree on is that, in light of La Mattina's recent deposition testimony, it would be improper for either the parties' or the Court to rely on his Declaration. Therefore, the Liquidation Trustee consents to the withdrawal of the Declaration.

21. To repeat, the Liquidation Trustee **will not** submit the Declaration or proffer testimony from La Mattina at the forthcoming preliminary injunction hearing scheduled for April 10, 2024.

22. As explained herein, the situation before this Court is a tale as old as time; a bad actor agreed to cooperate against his co-conspirators, and when it came time to look his co-conspirators in the face, he tried to lessen the impact of his confession in the interests of self-preservation.[2]

23. In fact, **not once** during the deposition did La Mattina state that the entire Declaration is false. Rather, La Mattina began the deposition by advising Defendants' counsel that he did not rely on documentation for the Declaration and then agreeing that "the statements that [he] made in [the declaration] are basically from [his] recollection, not from any documentation that was shown from [him] (*sic*) or any documents[.]" Trans. at 26:17-25. Continuing on, when Defendants' counsel questioned him regarding Paragraph 6 of the

---

[2] In fact, Defendants' counsel accused La Mattina of doing precisely this when he introduced and questioned La Mattina regarding a *different* exhibit, his resume. *See* Trans. 43:25 – 44:2 ("Why does it say assisted the CEO in his daily functions including investment sales[?] Was that a lie or are you just backing away from it now because it puts you in a bad light?").

11

Declaration ("Generally, when someone at NRIA, usually Nick Salzano, had an idea for a new advertisement, I would submit bids to two or three advertising companies to assess the cost of implementing the idea."), La Mattina responded that the statement was true. *See id*. at 67:4-23. And when Defendants' counsel questioned La Mattina regarding his statement that "nine times out of ten, Media Effective would propose bids that were much more expensive[,]" La Mattina responded that he was making "a general statement[,]" and, "it was just a recollection from over two and a half years ago." *See id*. at 71:13 – 72:14.

24. When confronted with the details, La Mattina continued on to shy away from the statements that he previously swore-to in the Declaration. *See id*. at 73:7-20 ("My personal knowledge was that his bids were higher but I didn't know the percentage. . . ."); *see also id*. 75:21-22 ("I wasn't aware of when [Nick Salzano's] trial was going to start I believe.").

25. Defendants' counsel then asked La Mattina if the Declaration was "replete with false statements," to which La Mattina answered "[o]bviously, yes." *Id*. at 76:10-12.

26. For the first time during his deposition—La Mattina made a concerted effort to distance himself from the Declaration given the weight of the statements therein.

27. Yet, Defendants paint a picture that La Mattina is retracting the Declaration in full and abandoning the statements he made therein. The deposition transcript reflects otherwise.

28. Even so, the Declaration is now a non-issue because the Liquidation Trustee cannot take La Mattina's word at face value anymore.

29. For these reasons, the Liquidation Trustee will not proffer the Declaration as evidence and further consents to its withdrawal.

### B. The Court has Inherent Powers to Impose Sanctions Pursuant to 28 U.S.C. § 1927 Only When an Attorney Acts in Bad Faith.

30. "In this circuit, a court must find four elements present in an attorney's conduct before the court can impose sanctions under [28 U.S.C. § 1927], specifically the attorney must have: '(1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; and (4) with bad faith or with intentional misconduct." *In re Schemelia*, 607 B.R. 455, 462 (Bankr. D.N.J. 2019) citing *LaSalle Nat'l Bank v. First Connecticut Holding Group, LLC*, 287 F.3d 279, 288 (3d Cir. 2002).

31. "Indeed, the conduct to be sanctioned must be of an 'egregious nature, stamped by bad faith[,]' and not because of 'misunderstanding, bad judgment, or well-intentioned zeal.' . . . 'Bad faith' is governed by a subjective standard. A court may consider whether the attorney has misrepresented facts before the court or unfairly manipulated the Bankruptcy Code. The Third Circuit has noted that 'what would be indicative of bad faith ... would be some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, *e.g.*, harassment or delay.'" *In re Beers*, No. BKR 08-12305, 2009 WL 1025402, at *2–3 (Bankr. D.N.J. Mar. 3, 2009), aff'd, No. CIV. A. 09-1666(FLW), 2009 WL 4282270 (D.N.J. Nov. 30, 2009), aff'd, 399 Fed. Appx. 748 (3d Cir. 2010)(unpublished) (internal citations omitted).

32. In the Motion, Defendants cited *Schemelia*, where this Court found that sanctions were warranted "[g]iven the nature of the debt, the nominal proposed payment plan, the inaccuracies in the Petition, and the fact that title had transferred and the redemption period expired prior to the Petition Date, the Court conclude[d] that the Petition was filed for an improper purpose and without legal or evidentiary support." *Schemelia*, 607 B.R. at 461. As a predicate to the Court's finding in *Schemelia*, the Court noted that, "the Petition was filed to delay eviction after a Writ of Possession had been issued under the guise of attempting to save

13

ownership of the Property. This was improper because both Mr. Ford and the Debtor ***were aware*** that title had transferred to the Creditor and the Debtor was effectively a tenant at sufferance with only a possessory interest. *Id*., 460–61 (emphasis added).

33. As evidenced by the cases cited by Defendants, a clear finding of bad faith or knowing conduct is required in order to impose sanctions pursuant to 28 U.S.C. § 1927.

### ***C. Because The Liquidation Trustee Did Not Act in Bad Faith, Sanctions Are Not Warranted.***

34. Unlike in *Schemelia*, the Liquidation Trustee did not act in bad faith here. In fact, counsel for the Liquidation Trustee was equally surprised and shocked when La Mattina refused to stand by his Declaration during the deposition. *See* Lasley Dec. ¶ 14.

35. Notwithstanding this surprise, Defendants repeatedly make accusations that the Liquidation Trustee "submitted the La Mattina Declaration knowing that [statements within] were false" (Mot. ¶ 22), that the Trustee perpetrated a "fraud on the Court" (*id*. ¶ 27), and "knowingly submitt[ed] the falsified La Mattina Declaration" (*id*. ¶ 30). Defendants also assert that the Trustee "imparted the information concerning Media's profit margins to La Mattina because he did not know it and because the Trustee wanted to make it appear as though NRIA had issues with and was aware of Media's profit margins – when in fact NRIA did not."

36. Nothing could be farther from the truth. The deposition transcript reflects that the Liquidation Trustee provided La Mattina the opportunity to review and revise the Declaration to align with his personal knowledge. *See* Trans. 9:15-20; *see also id*. 156:2 – 157:1. La Mattina, in fact, made changes to the Declaration. *Id*.

37. Defendants seemingly take issue with the well-accepted practice that "[w]itness affidavits are typically drafted by counsel and then presented to the witness for his or her approval and signature." *Burlington v. News Corp.*, No. CV 09-1908, 2010 WL 11474545, at *1

(E.D. Pa. June 7, 2010). The Court in *Burlington* went on, "[o]bviously, when such drafts are not executed it is because they do not accurately reflect the witness's recollection." *Id*.

38. Here, after two meetings with La Mattina, counsel for the Liquidation Trustee compiled the Declaration and sent it to him for this review and input. Upon his review and revisions, La Mattina executed the Declaration and thereby adopted all of the statements within as true and accurate. As the *Burlington* court noted, La Mattina's execution of the Declaration demonstrated that the contents of the Declaration were, in fact, accurate.

39. Going one step further, the Liquidation Trustee acted in good faith when it believed La Mattina's statements within the Declaration were true and accurate. In fact, La Mattina's very actions in reviewing, revising, and signing the Declaration resulted in the Liquidation Trustee's belief that La Mattina had personal knowledge of the facts in the Declaration and that each statement within was true and accurate. If anyone deserves to be sanctioned, it is La Mattina alone.[3]

40. At bottom, Defendants have offered no evidence (and none exists) that the Liquidation Trustee acted in bad faith in offering the Declaration. The opposite is true; the Liquidation Trustee relied in good faith on La Mattina's statements in believing that the Declaration is accurate and within his realm of personal knowledge.

41. Because the Liquidation Trustee did not act in bad faith, sanctions are not warranted here. *See In re Beers,* No. BKR 08-12305, 2009 WL 1025402, at *4 (Bankr. D.N.J. Mar. 3, 2009), aff'd, No. CIV. A. 09-1666(FLW), 2009 WL 4282270 (D.N.J. Nov. 30, 2009), aff'd, 399 Fed. Appx. 748 (3d Cir. 2010)(unpublished) ("As frustrating as EMC's counsel's

---

[3] As noted *supra*, the Liquidation Trustee will no longer proffer La Mattina's testimony via affidavit or otherwise at the hearing scheduled for April 10, 2024. Further, the Liquidation Trustee continues to investigate all available claims against La Mattina for his participation in the Debtors' scheme.

15

conduct was, the Court cannot award sanctions under 28 U.S.C. § 1927, because it cannot find willful misconduct."); *see also In re Antonelli*, No. 11-20255/JHW, 2012 WL 280722, at *16 (Bankr. D.N.J. Jan. 30, 2012) (making a finding of bad faith before awarding sanctions against debtor's attorney).

## CONCLUSION

The Liquidation Trustee's role is to uncover and locate assets of the estate and recover those assets to be rightfully returned to all that were harmed in the Debtors' fraudulent scheme. To advance this goal in the above-captioned proceeding, the Liquidation Trustee relied on La Mattina's statements and accepted a cooperator's word at face value. Even though La Mattina now attempts to distance himself from his sworn-to statements, the Liquidation Trustee acted in good faith at all times when working with La Mattina in preparing and submitting the Declaration to this Court.

Therefore, the Liquidation Trustee respectfully requests this Court **DENY** the Motion as the Trustee does not intend to offer the Declaration as evidence, rendering Defendants' Motion to Strike as moot, and because the Trustee did not act in bad faith, making sanctions improper here.

Dated: April 8, 2024

        **ICE MILLER LLP**

        */s/ Louis T. DeLucia*
        Louis T. DeLucia
        Alyson M. Fiedler
        1500 Broadway, Suite 2900
        New York, NY 10036
        Phone: (212) 835-6312
        louis.delucia@icemiller.com
        alyson.fiedler@icemiller.com

        Aneca E. Lasley (admitted pro hac vice)

John C. Cannizzaro (admitted pro hac vice)
250 West Street, Suite 700
Columbus, Ohio 43215
Phone: (614) 462-1085
aneca.lasley@icemiller.com
john.cannizzaro@icemiller.com

*Counsel to AIRN Liquidation Trust Co., LLC, in its capacity as Liquidation Trustee of the AIRN Liquidation Trust*

**CERTIFICATE OF SERVICE**

    I HEARBY CERTIFY on April 8, 2024, I filed the foregoing with the Court by uploading to the CM/ECF system for the United States Bankruptcy Court for the District of New Jersey and that a true and correct copy was served as indicated on all counsel of record via Notice of Electronic Filing.

    ICE MILLER LLP

    By: */s/ Louis T. DeLucia*

    1500 Broadway, Suite 2900
    New York, NY 10036
    Telephone: (212) 835-6312

    *Counsel to AIRN Liquidation Trust Co.,*
    *LLC, in its capacity as Liquidation Trustee*
    *of the AIRN Liquidation Trust*