| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**Edmond M. George, Esquire**<br>**OBERMAYER REBMANN MAXWELL & HIPPEL, LLP**<br>**1120 S NJ 73**<br>**Suite 420**<br>**Mount Laurel, NJ  08054**<br>*Counsel to Defendants Javier Torres, Media Effective, LLC, Dora Dillman, Javier Torres, Jr., Natalia Torres, Paulina Torres.* | |
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No:  22-14539-JKS<br><br>(Jointly Administered) |
| AIRN LIQUIDATION TRUST CO., LLC, in its capacity as Liquidation Trustee of the AIRN LIQUIDATION TRUST,<br><br>                Plaintiff,<br><br>v.<br><br>MEDIA EFFECTIVE LLC, *et al.*,<br><br>                Defendants. | Adv. Pro. No.  23-1335-JKS |

**MOTION OF JAVIER TORRES, MEDIA EFFECTIVE, LLC, DORA DILLMAN, JAVIER TORRES, JR., NATALIA TORRES, AND PAULINA TORRES TO STRIKE THE APRIL 4, 2024, DECLARATIONS OF ANGELA SOLK AND PATRYK GOLASZEWSKI**

Javier Torres ("Javier"), Media Effective, LLC ("Media"), Dora Dillman, Javier Torres,

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA.

1

Jr., Natalia Torres, Paulina Torres (the "Torres Family," and collectively with Javier and Media, the "Defendants"), by and through their undersigned counsel, Obermayer Rebmann Maxwell & Hippel LLP, file the instant Motion to Strike the April 4, 2024, Declarations of Angela Solk ("Solk") and Patryk Golaszewski ("Golaszewski") (the "Motion"), and in support thereof, relies on the Certification of Edmond George (the "George Certification") and states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion filed in connection with the above-captioned adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b) as this matter arises in, under, and is related to the above-captioned bankruptcy case.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal bases for the relief requested in this Motion are section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"); rule 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); rule 65(b)(4), (c), and (d) of the Federal Rules of Civil Procedure (the "Federal Rules"); 28 U.S.C. §§ 1746 and 1927; and applicable state law.

## II. BACKGROUND

4. In 2012, Javier and Media began a business relationship with National Realty Investment Advisors, LLC ("NRIA") as a client when NRIA asked Media to be a media buyer for NRIA.

5. Throughout their relationship, Javier, through Media, provided numerous services to NRIA by acting as a media agent for the placement of advertising on radio and television.

6. Javier took NRIA from advertising on one local radio station in 2012 to advertising nationally on multiple radio and television stations in 2022.

7. Javier and Media conducted over ten (10) years of effective negotiations with television and radio stations on NRIA's behalf.

8. On June 7, 2022, the Debtors, including NRIA, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* Compl., Dkt. No. 1, ¶ 32.

9. Consistent with Bankruptcy Rule 2004, the Committee and, later, the Trustee began conducting discovery of various third parties, including third-party financial institutions. *See id.* ¶ 69.

10. On January 20, 2023, the Committee issued one Bankruptcy Rule 2004 Subpoena to Media and one to Javier. *See id.* ¶¶ 70–71.

11. On November 10, 2023, AIRN Liquidation Trust Co., LLC, in its capacity as Liquidation Trustee of the AIRN Liquidation Trust's (the "Trustee") filed a complaint against the Defendants, thereby commencing the above-captioned adversary proceeding and an emergency motion with this Court, requesting injunctive relief that would freeze the assets of Media, Javier, and many of Javier's family members. *See* Dkt. Nos. 1 & 2.

12. The Court entered the temporary restraining order on November 22, 2023, in connection with the Trustee's claim for a right to an accounting since courts do not provide prejudgment attachments in connection with fraudulent conveyance claims (the "TRO"). *See* Dkt. No. 9.

13. The TRO included significantly more restraints than Defendants' counsel suggested and would have ever agreed to.

14. The TRO prohibited numerous people and entities, including Media, Javier, Natalia, Paulina, and Javier's wife, Dora, from "selling, assigning, transferring, encumbering, or otherwise disposing of the [the delineated] funds." *Id.* ¶¶ 3(a)–(e).

4887-4907-0260 v3

15. Additionally, the TRO required that "Defendants shall provide an accounting of all funds or property transferred and payments made to them by or for the benefit of the Debtors prior to the Petition Date." *Id.* ¶ 2

16. Thereafter, on January 16, 2024, Defendants filed a motion seeking the TRO to be ordered to be formally dissolved (the "Dissolution Motion"). *See* Dkt. No. 22.

17. On January 17, 2024, the Trustee filed his objection to the Dissolution Motion.

18. On January 17, 2024, the Trustee filed his objection to the Dissolution Motion, which, among other documents, relied heavily upon the Declaration of Glenn A. La Mattina ("La Mattina") made pursuant to 28 U.S.C. §1746 (the "La Mattina Declaration"). *See* Dkt. No. 28-3. *See* **Exhibit "A"** to George Certification.

19. Ultimately, the Court declined to dissolve the TRO largely because of the statements made in the La Mattina Declaration. *See* Dkt. No. 30.

20. La Mattina stated that the La Mattina Declaration was "based on my personal knowledge and experience." and the statements contained therein were true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746. *See* Id. at ¶¶ 3, 10.

21. La Mattina was subsequently deposed on March 22, 2024, during which he admitted that, despite the statements made in paragraph 6 of his Declaration, he had no way of knowing what Media's profit margin was, that he was never opposed to using Media Effective as sworn to in paragraph 7 and that in fact, the material statements made in his declaration were false and not within his personal knowledge.

22. Subsequently, Defendants filed a Motion to Strike the January 17, 2024, Declaration of Glenn A. La Mattina as False and to Impose Sanctions on AIRN Liquidation Trust

4

Co., LLC, in its capacity as Liquidation Trustee of the AIRN Liquidation Trust's as the Sponsor of the Declaration (the "First Motion to Strike"). *See* Dkt. No. 42.

23. The Trustee initially declined to withdraw the La Mattina Declaration; however, on April 5, 2024, after Defendants sent their binders to the Court and had prepared for the disclosed witnesses, the Trustee notified the Court and Defendants for the first time that the Trustee would be withdrawing the La Mattina Declaration and replacing it with the Declarations of Solk (the "Solk Declaration") and Golaszewski (the "Golaszewski Declaration" and together with the Solk Declaration, the "Declarations"). *See* **Exhibits "B"** and **"C"** to George Certification.

24. The Trustee submitted the Declarations just, four (4) business days, before the Preliminary Injunction Hearing on April 10, 2024 (the "PI Hearing"), and after the Trustee knew Defendants had submitted their binders and exhibits for the PI Hearing.

25. Additionally, the Trustee and the Defendants had a stipulation as to witnesses who would need to be deposed in advance of the PI Hearing, and neither Solk nor Golaszewski were identified by the Trustee. *See* Dkt. No. 35.

26. Indeed, and more egregiously, the Trustee failed to identify Solk as an expert in his Rule 26 Disclosures; Defendant was completely surprised by Solk's declaration and her involvement in this case.

27. Although the Trustee said it had an expert, the identity was not disclosed under Rule 26.

28. Prior to the submission of the Solk Declaration, the Trustee had represented that it would only be relying on the expert testimony of William B. Waldie ("Waldie").

29. Defendants assert that the Trustee only decided to submit the Solk Declaration after Waldie admitted during his deposition that in analyzing Media's rates, he did not compare Media's

5

rates to market rates. *See* Waldie Transcript, **Exhibit "D"** to George Certification, p. 22, line 3 through p. 23, line 24.

30. Defendants were unaware of the Declarations, or that testimony from Solk or Golaszewski would be used at the PI Hearing prior to April 4, 2024.

31. Due to Defendants' need to prepare for the impending PI Hearing, Defendants' counsel's busy schedule, and Defendants' witnesses traveling to the PI Hearing from out of town; Defendants will not be able to depose Solk or Golaszewski in the two (2) workdays remaining before the PI Hearing.

32. Defendants assert that the Trustee purposely wait until the last minute to withdraw the La Mattina Declaration and filed the Declarations when he did so as a form of gamesmanship and in an effort to prevent Defendants from fairly preparing for or presenting their case.

33. Indeed, Defendants' case cannot be fairly presented in the face of the Declarations when Defendants have not, and will not, be able to depose Solk or Golaszewski before the PI Hearing.

34. Clearly, the Declarations were submitted in bad faith.

35. As such, the Declarations must be stricken, and the Trustee should be sanctioned as the Declarations have denied Defendants of due process of the law and were submitted in bad faith.

## II. LEGAL ARGUMENT

### A. Defendants' Have Been Denied of Due Process of Law by the Submission of the Declarations

36. In cases "where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).

4887-4907-0260 v3

37. This even applies in civil proceedings. *See Id.*; *Motto v. City of Union City*, 177 F.R.D. 308, 310 (D.N.J. 1998); *Baird v. Owczarek*, 93 A.3d 1222, 1227 (2014) (stating in civil proceedings there exists "an effective opportunity to defend by confronting any adverse witnesses…"); *Louisiana State Bar Ass'n v. Levy*, 292 So.2d 492, 494 (1974); *Hyson v. Montgomery County Council*, 217 A.2d 578, 585-86 (1966); *see Matter of Alamance County Court Facilities*, 405 S.E.2d 125, 137 (1991) (indicating that the substantive right to confront and cross-examine applies even in civil proceedings).

38. The Third Circuit has specifically recognized that "the right of cross-examination inheres in every adversary proceeding and that it is established beyond any necessity for citation of authorities ... that if cross-examination of an available witness is not had[,] the litigant, deprived of cross-examination, has been denied due process of law." *Stathum v. Nadrowski*, No. CV155502MASTJB, 2019 WL 3470834, at *3 (D.N.J. July 31, 2019) (quoting and citing *Derewecki v. Pa. R.R. Co.*, 353 F.2d 436, 442 (3d Cir. 1965)).

39. Here, by the Trustee submitting the Declarations when he did, Defendants have been denied due process of law.

40. Indeed, the Declarations were submitted on April 4, 2024, leaving Defendants with only three (3) business days in which depositions could be taken.

41. This effectively made it impossible for Defendants to confront and/or cross-examine Solk or Golaszewski, as adverse witnesses, before the PI Hearing—a fact the Trustee was well aware of when the Declarations were submitted.

42. Therefore, by submitting the Declarations at a time that made it impossible for Defendants to be able to confront and/or cross-examine Solk or Golaszewski, the Trustee has caused Defendants to be denied due process of law.

4887-4907-0260 v3

### B. The Court Has Inherent Power to Impose Sanctions in this Case

43. Bankruptcy Courts have "inherent powers" to sanction upon a finding of bad faith behavior in the course of litigation. In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991), the court observed that ". . . whereas each of the other mechanisms [sanctioning statutes and rules] reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." Acknowledging that the inherent powers are essential for a court to control the conduct before then, a number of courts recognize the bankruptcy court's authority to sanction for abuse of the judicial process. *See In re Rainbow Magazine, Inc.,* 77 F.3d 278, 285 (9th Cir. 1996).

44. The court's inherent power is completely within the court's discretion when the court finds "bad faith" in the context of a litigation, including submitting documents that contain knowingly false statements. *See In re Schemelia*, 607 B.R. 455, 455-462 (Bankr. D.N.J. 2019)

45. However, this power is to be exercised with restraint if the behavior can be remedied under Bankruptcy Rule 9011. *See e.g. In re Cherokee Simeon Venture I, LLC*, 2013 Bankr., LEXIS 4794 (Bankr. D. Del. 2013); citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 at 50.

46. In *Chambers,* our Supreme Court noted that if "neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.*

47. Bankruptcy Rule 9011 does not apply here, and as such, the Court's inherent powers can be exercised without restraint.

48. Here, the Trustee undoubtedly acted in bad faith.

49. As stated above, the Trustee purposely agreed to withdraw the La Mattina Declaration and filed the Declarations when he did so as a form of gamesmanship, and in an effort to prevent Defendants from fairly presenting their case.

4887-4907-0260 v3

50. Further, as discussed above, by submitting the Declarations when he did, the Trustee has denied Defendants of due process of the law.

51. Defendants' case cannot be fairly presented in the face of the Declarations when Defendants have not, and will not, be able to depose Solk or Golaszewski before the PI Hearing.

52. The Trustee was aware of these facts and submitted the Declarations when he did in order to surprise Defendants and hinder their case.

53. Further, the Trustee failed to identify either Solk or Golaszewski in his Rule 26 disclosures.

54. Therefore, because the Declarations were submitted in bad faith, the Court should utilize its inherent powers to impose sanctions.

    **C.**    **The Court Should Strike the Declarations as a Sanction**

55. Section 105 of the Bankruptcy Code, which imbues Bankruptcy Courts with the power to issue any order "necessary or appropriate to carry out the provisions of this title." allows Bankruptcy Courts to exercise these inherent powers as they see fit. *See In re Schemelia*, 607 B.R. at 462; *In re Miller*, 730 F.3d 198, 206 (3d Cir. 2013); 11 U.S.C. § 105.

56. Specifically, Bankruptcy Courts can employ Section 105 to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *In re Antonelli*, 2012 WL 280722, at *13 (Bankr. D.N.J. 2012); *In re Schemelia*, 607 B.R. at 462.

57. In order to impose sanctions through Section 105, Bankruptcy Courts must find "a clear showing of bad faith on the part of the party to be sanctioned and clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *In re Gordon*, 577 B.R. 38, 51 (S.D.N.Y. 2017); *Elmasri v. Rupp*, No. 10 Civ. 2761 (JS), 2011 WL

9

477726, at *4 (E.D.N.Y. Feb. 2, 2011); *see also In re Varan*, Case No. 11 B 44072, 7* (Bankr. N.D. Ill. Jun. 24, 2014) (citing and quoting *In re Rimsat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000) ("a court may resort to § 105(a) and its inherent powers 'to ensure that all the culpable parties receive[] an appropriate sanction[.]'" ).

58. Ultimately, it is up to Bankruptcy Courts to select "the most appropriate sanction under the circumstances," especially where false testimony is given in an effort to prevent the other party from fairly presenting its case. *In re Hecker*, 430 B.R. 189, 196 (Bankr. D. Minn. 2010) (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999)).

59. Here, the Trustee's decision to withdraw the La Mattina Declaration and submit the Declarations on April 4, 2024, just three (3) business days before the PI Hearing and after the submission of Defendants' declarations, while knowing Defendants would not be able to depose Solk or Golaszewski before the PI Hearing, was done in bad faith and motivated by the improper purpose of the Trustee attempting to prevent Defendants from fairly presenting their case.

60. Under these circumstances, the most appropriate sanction is for the Court to employ Section 105 to issue an order Striking the Declarations.

61. Such an order would be consistent with the intent of Section 105 as it would be "necessary or appropriate" to prevent Defendants from being denied due process of law, and the injustice on Defendants resulting from the Trustee being allowed to use the Declarations as evidence or testimony.

62. To that extent, Bankruptcy Courts have the "power and discretion to strike a document in order to protect legitimate interests." *In re Peregrine Sys., Inc.*, 311 B.R. 679, 690 (D. Del. 2004); *see also Young v. Young (In re Young)*, 789 F.3d 872, 879 (8th Cir. 2015) (overseeing the conduct of bankruptcy lawyers is critical to protecting the interests of debtors and

4887-4907-0260 v3

the entire bankruptcy system) (quoting *In re Armstrong*, 487 B.R. 764, 774 (E.D. Tex. 2012)) ("The potential for mischief to be caused by an attorney who is willing to skirt ethical obligations and procedural rules [in bankruptcy cases] is enormous.").

63. Indeed, this Court has inherent power under Section 105 to regulate the submission and admission of evidence.

64. The Trustee intends to use the Declarations as testimony going forward despite knowing that he never identified Solk or Golaszewski in his Rule 26 disclosures and that the Defendant would not be able to depose Solk or Golaszewski before the PI Hearing.

65. Further, Defendants' case cannot be fairly presented in the face of the Declarations when Defendants have not, and will not, be able to depose Solk or Golaszewski before the PI Hearing. *In re Hecker*, 430 B.R. at 196.

66. By striking the Declarations, the Court will protect the legitimate interests of Defendants by affording Defendants due process of law, and to be able to depose Solk or Golaszewski as witnesses.

67. Therefore, to allow Defendants due process of law, prevent injustice on Defendants, and allow Defendants to fairly present their case, it is necessary and appropriate for the Court to enter an order striking the Declarations.

### III. CONCLUSION

68. It is undoubted that the Trustee agreed to withdraw the La Mattina Declaration and submitted the Declarations on April 4, 2024, just six (6) days before the PI Hearing, while knowing Defendants would not be able to depose Solk or Golaszewski before the PI Hearing. The submission of the Declarations has denied Defendants of due process of law, is in bad faith, and will prejudice Defendants unless they are stricken.

11

**WHEREFORE**, Defendants, Javier Torres, Media Effective, LLC, Dora Dillman, Javier Torres, Jr., Natalia Torres, and Paulina Torres respectfully ask this Court to enter an order in their favor imposing the following sanctions by way of ordering the Declarations stricken.

Respectfully submitted,

Dated: April 8, 2024　　　　　　　　　　*/s/ Edmond M. George*
　　　　　　　　　　　　　　　　　　　Edmond M. George, Esquire
　　　　　　　　　　　　　　　　　　　OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
　　　　　　　　　　　　　　　　　　　1120 S NJ 73
　　　　　　　　　　　　　　　　　　　Suite 420
　　　　　　　　　　　　　　　　　　　Mount Laurel, NJ 08054
　　　　　　　　　　　　　　　　　　　*Counsel to Defendants Javier Torres, Media Effective, LLC, Dora Dillman, Javier Torres, Jr., Natalia Torres, Paulina Torres.*