| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**Edmond M. George, Esquire**<br>**OBERMAYER REBMANN MAXWELL & HIPPEL, LLP**<br>**1120 S NJ 73**<br>**Suite 420**<br>**Mount Laurel, NJ  08054**<br>*Counsel to Defendants Javier Torres, Media Effective, LLC, Dora Dillman, Javier Torres, Jr., Natalia Torres, Paulina Torres.* | |
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No:  22-14539-JKS<br><br>(Jointly Administered) |
| AIRN LIQUIDATION TRUST CO., LLC, in its capacity as Liquidation Trustee of the AIRN LIQUIDATION TRUST,<br><br>                Plaintiff,<br><br>v.<br><br>MEDIA EFFECTIVE LLC, *et al.*,<br><br>                Defendants. | Adv. Pro. No.  23-1335-JKS |

**CERTIFICATION OF EDMOND M. GEORGE, ESQ. IN SUPPORT OF MOTION OF JAVIER TORRES, MEDIA EFFECTIVE, LLC, DORA DILLMAN, JAVIER TORRES, JR., NATALIA TORRES, AND PAULINA TORRES TO STRIKE THE APRIL 4, 2024, DECLARATIONS OF ANGELA SOLK AND PATRYK GOLASZEWSKI**

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA.

1

I, Edmond M. George, Esq., counsel for Javier Torres ("Javier"), Media Effective ("Media"), Dora Dillman, Javier Torres, Jr., Natalia Torres, Paulina Torres (the "Torres Family," and collectively with Javier and Media, the "Defendants"), being of full age, submit this certification in support of Defendants' Motion[2] and state as follows:

1. In 2012, Javier and Media began a business relationship with National Realty Investment Advisors, LLC ("NRIA") as a client when NRIA asked Media to be a media buyer for NRIA.

2. Throughout their relationship, Javier, through Media, provided numerous services to NRIA by acting as a media agent for the placement of advertising on radio and television.

3. Javier took NRIA from advertising on one local radio station in 2012 to advertising nationally on multiple radio and television stations in 2022.

4. Javier and Media conducted over ten (10) years of effective negotiations with television and radio stations on NRIA's behalf.

5. On June 7, 2022, the Debtors, including NRIA, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* Compl., Dkt. No. 1, ¶ 32.

6. Consistent with Bankruptcy Rule 2004, the Committee and, later, the Trustee began conducting discovery of various third parties, including third-party financial institutions. *See id.* ¶ 69.

7. On January 20, 2023, the Committee issued one Bankruptcy Rule 2004 Subpoena to Media and one to Javier. *See id.* ¶¶ 70–71.

8. On November 10, 2023, the Trustee filed a complaint against the Defendants, thereby commencing the above-captioned adversary proceeding and an emergency motion with

---

[2] Capitalized terms used in this Certification but not defined herein shall have the meanings ascribed to such terms in the Motion.

this Court, requesting injunctive relief that would freeze the assets of Media, Javier, and many of Javier's family members.  *See* Dkt. Nos. 1 & 2.

9. The Court entered the temporary restraining order on November 22, 2023, in connection with the Trustee's claim for a right to an accounting since courts do not provide prejudgment attachments in connection with fraudulent conveyance claims (the "TRO").  *See* Dkt. No. 9.

10. The TRO included significantly more restraints than Defendants' counsel suggested and would have ever agreed to.

11. The TRO prohibited numerous people and entities, including Media, Javier, Natalia, Paulina, and Javier's wife, Dora, from "selling, assigning, transferring, encumbering, or otherwise disposing of the [the delineated] funds."  *Id.* ¶¶ 3(a)–(e).

12. Additionally, the TRO required that "Defendants shall provide an accounting of all funds or property transferred and payments made to them by or for the benefit of the Debtors prior to the Petition Date." *Id.* ¶ 2

13. Thereafter, on January 16, 2024, Defendants filed a motion seeking the TRO to be ordered to be formally dissolved (the "Dissolution Motion").  *See* Dkt. No. 22.

14. On January 17, 2024, the Trustee filed his objection to the Dissolution Motion.

15. On January 17, 2024, the Trustee filed his objection to the Dissolution Motion, which, among other documents, relied heavily upon the Declaration of Glenn A. La Mattina ("La Mattina") made pursuant to 28 U.S.C. §1746 (the "La Mattina Declaration"). *See* Dkt. No. 28-3. A true and correct copy of the La Mattina Declaration is attached as **Exhibit "A"** hereto.

16. Ultimately, the Court declined to dissolve the TRO largely because of the statements made in the La Mattina Declaration. *See* Dkt. No. 30.

17. La Mattina stated that the La Mattina Declaration was "based on my personal knowledge and experience." and the statements contained therein were true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746. *See* Id. at ¶¶ 3, 10.

18. La Mattina was subsequently deposed on March 22, 2024, during which he admitted that, despite the statements made in paragraph 6 of his Declaration, he had no way of knowing what Media's profit margin was, that he was never opposed to using Media Effective as sworn to in paragraph 7 and that in fact, the material statements made in his declaration were false and not within his personal knowledge.

19. Subsequently, Defendants filed a Motion to Strike the January 17, 2024, Declaration of Glenn A. La Mattina as False and to Impose Sanctions on AIRN Liquidation Trust Co., LLC, in its capacity as Liquidation Trustee of the AIRN Liquidation Trust's as the Sponsor of the Declaration (the "First Motion to Strike"). *See* Dkt. No. 42.

20. The Trustee initially declined to withdraw the La Mattina Declaration; however, on April 5, 2024, after Defendants sent their binders to the Court and had prepared for the disclosed witnesses, the Trustee notified the Court and Defendants for the first time that the Trustee would be withdrawing the La Mattina Declaration and replacing it with the Declarations. True and correct copies of the Declarations are attached as **Exhibits "B"** and **"C"** hereto.

21. The Trustee submitted the Declarations just four (4) business days, before the Preliminary Injunction Hearing on April 10, 2024 (the "PI Hearing"), and after the Trustee knew Defendants had submitted their binders and exhibits for the PI Hearing.

22. Additionally, the Trustee and the Defendants had a stipulation as to witnesses who would need to be deposed in advance of the PI Hearing, and the Trustee identified neither Solk nor Golaszewski. *See* Dkt. No. 35.

4

23. Indeed, and more egregiously, the Trustee failed to identify Solk as an expert in his Rule 26 Disclosures; Defendant was completely surprised by Solk's declaration and her involvement in this case.

24. Although the Trustee said it had an expert, the identity was not disclosed under Rule 26.

25. Prior to submitting the Solk Declaration, the Trustee had represented that it would only rely on the expert testimony of William B. Waldie ("Waldie").

26. Defendants assert that the Trustee only decided to submit the Solk Declaration after Waldie admitted during his deposition that in analyzing Media's rates, he did not compare Media's rates to market rates. *See* Waldie Transcript, a true and correct copy of which is attached as **Exhibit "D"** hereto, p. 22, line 3 through p. 23, line 24.

27. Defendants were unaware of the Declarations, or that testimony from Solk or Golaszewski would be used at the PI Hearing prior to April 4, 2024.

28. Due to Defendants' need to prepare for the impending PI Hearing, Defendants' counsel's busy schedule, and Defendants' witnesses traveling to the PI Hearing from out of town; Defendants will not be able to depose Solk or Golaszewski in the two (2) workdays remaining before the PI Hearing.

29. Defendants assert that the Trustee purposely waited until the last minute to withdraw the La Mattina Declaration and filed the Declarations when he did so as a form of gamesmanship and in an effort to prevent Defendants from fairly preparing for or presenting their case.

4887-4907-0260 v3

30. Indeed, Defendants' case cannot be fairly presented in the face of the Declarations when Defendants have not, and will not, be able to depose Solk or Golaszewski before the PI Hearing.

31. As such, the Declarations must be stricken as the Declarations were submitted in a manner that denies Defendants due process of law, and in bad faith.

32. In light of all of the above and the arguments included in the Motion, it is clear that the imposition of sanctions is warranted here, and as such, the Court should grant the Motion of Defendants, ordering the Declarations stricken.

I certify under penalty of perjury that the above information is true.

Dated: April 8, 2024
/s/ Edmond M. George
Edmond M. George, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
1120 S NJ 73
Suite 420
Mount Laurel, NJ  08054
*Counsel to Defendants Javier Torres, Media Effective, LLC, Dora Dillman, Javier Torres, Jr., Natalia Torres, Paulina Torres.*