# EXHIBIT "C"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**ICE MILLER LLP**
Louis. T. DeLucia
Alyson M. Fiedler
1500 Broadway, Suite 2900
New York, NY 10036
Phone: (212) 835-6312
louis.delucia@icemiller.com
alyson.fiedler@icemiller.com

Aneca E. Lasley (admitted pro hac vice)
John C. Cannizzaro (admitted pro hac vice)
250 West Street, Suite 700
Columbus, Ohio 43215
Phone: (614) 462-1085
aneca.lasley@icemiller.com

*Counsel to AIRN Liquidation Trust Co., LLC,
in its capacity as Liquidation Trustee of the
AIRN Liquidation Trust*

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No: 22-14539-JKS<br><br>(Jointly Administered) |
| AIRN LIQUIDATION TRUST CO., LLC, as Liquidation Trustee of the AIRN LIQUIDATION TRUST,<br><br>               Plaintiff,<br><br>v.<br><br>MEDIA EFFECTIVE LLC, *et al.*,<br><br>               Defendants. | Adv. Pro. No. 23-1335-JKS |

## <u>DECLARATION OF PATRYK GOLASZEWSKI</u>

I, Patryk Golaszewski, having been first duly sworn upon an oath, state:

1.      My name is Patryk Golaszewski. I am an adult over the age of 18, and I have personal knowledge of and am competent to testify to the facts set forth in this declaration.

2.      I first met Thomas Nicholas Salzano ("Salzano") in or around 2018 when my parents moved into a townhome in the same neighborhood where the Salzanos lived.

3.      Following graduation from high school, I enrolled in college at the New Jersey Institute of Technology where I started out studying Mechanical Engineering and shortly thereafter switched to Construction Management Technology.

4.      In the spring of 2019, I emailed Salzano to inquire about an internship with National Realty Investment Advisors, LLC ("NRIA"). I interviewed and was hired as an intern in May 2019.

5.      I worked at NRIA from May 2019 until February 2022. I started out as an intern, and then in mid-late 2020 or early 2021, I was hired in a full-time capacity as Operations Manager. I started out making $20/hour and subsequently was paid a base salary of $100,000. When I left NRIA, my base salary was $140,000.

6.      While employed at NRIA, I was in regular contact with and took direction from Salzano.

7.      In the role of Operations Manager, one of my primary responsibilities was to review NRIA's marketing/advertising contracts. While Salzano approved all such contracts, I helped negotiate contracts with Sirius XM and iHeart Radio.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA.

8.     Within six months of working at NRIA, I began working with Javier Torres ("Torres") of Media Effective, LLC ("Media Effective"), but Salzano controlled NRIA's relationship with Media Effective and Javier Torres.

9.     NRIA, and primarily Salzano and I, monitored how the stations and networks performed in terms of generating leads. Salzano would determine what changes, if any, to make to the stations and networks on which NRIA advertisements ran. Those changes were communicated to Torres by either Salzano or me.

10.     In my role as Operations Manager, I never saw Hybrid Media's invoices or charges. I only received and saw Media Effective's invoices. In fact, I do not recall hearing about Hybrid Media while employed at NRIA. To the best of my recollection, neither Torres nor Media Effective ever mentioned Hybrid Media by name to me.

11.     While employed at NRIA, I noticed that Torres came to NRIA's office almost every Friday to pick up checks in-person for each individual media station buy reflected on Torres' weekly email to Salzano. Torres continued to do so even after Salzano was arrested. Even after Salzano's arrest, NRIA continued to pay Media Effective's invoices and to issue checks at Torres' direction in the same manner as before Salzano's arrest.

12.     Even after his arrest in 2021, Salzano remained in charge of NRIA. Rey Grabato ("Grabato"), who held the title of CEO of NRIA, took direction from Salzano before and after the arrest, even though Grabato was outwardly represented to be leading NRIA.

13.     After Salzano was arrested in March 2021, and was purportedly no longer coming into the office,  another NRIA employee (Kyle Stafirny) and I started to look into Media Effective billing practices based on our suspicion that Media Effective was overcharging NRIA.

14. As part of our investigation into Media Effective, we needed to determine the commission or markup being charged by Media Effective as that was not information provided by Torres. In approximately, mid-2021, we reached out to stations like Fox News in an attempt to confirm the rates they were charging.

15. Soon after we began investigating Media Effective's billing practices, Javier Torres learned of our inquiries to the stations, and then Salzano directed that us to shut down the inquiry.

16. Even though Media Effective's invoices reflected rates that seemed very high, and Salzano was not working in the office after his arrest, Salzano specifically directed that we stop our inquiry into the appropriateness of Media Effective's billings.

17. As directed by Salzano, we stopped our investigation into Media Effective's billing practices. Consequently, NRIA continued to pay Media Effective's invoices and issue checks at Salzano's direction.

18. In October of 2021, I asked Torres to send us an invoice with his fee separated out for each station for which he was invoicing NRIA. *See* **Exhibit 67**.

19. In response, Torres told me that his commission on media buys varies according to volume, but that "most of the time the volume buyers and myself negotiate a commission with the media companies between 5-15% and it is split among the participants." *See id.* at AIRNTRUST0044001.

20. I followed up to confirm that Media Effective's commission was incorporated into the media buy for each station and requested that he or the stations break it out. *See id.* at AIRNTRUST043999.

21.     In response, Torres again told me that Media Effective is "paid by the media company for the business [he brings] them" and that "[a] good indicator could be about 8% for radio buys and 7% for TV buys." *See id.* at AIRNTRUST04399.

22.     Beginning in or around November 2021, Torres finally began to provide his purported commissions on his invoices.

23.     I often questioned why we were not allowed to bring all the media buying in-house like we did with other stations/platforms, to save the company money.

24.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Dated:  April 4, 2024
Rutherford, New Jersey                      */s/ Patryk Golaszewski*
                                            Patryk Golaszewski